IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Magistrate Judge Boyd N. Boland

Civil Action No. 07-cv-02041-CMA-BNB

MICHAEL GENE YOUNG,

Plaintiff,

v.

THOMAS A. ESKESTRAND, M.D.,
ORVILLE NEUFELD, PhD D.O.,
R. LINDSAY LILLY JR., M.D.,
LOUIS CABLING, M.D.,
GARY A. GO, M.D.,
KELLY WASKO, RN,
THEODORE LAWRENCE, PA,
TEJENDER SINGH, PA,
PATTY BEECROFT, M.D.,
DANNY ENGLUND, M.D.,
JOSEPH WERMERS, M.D.,
DEBRA HOWE, RN,
JOHN DOE AND JANE DOE 1-50,

Defendants.

_____

**RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE**
_____

This matter is before me on the **CDOC Defendants' Motion to Dismiss** [Doc. #52, filed

6/6/08] (the "Motion") brought by defendants Eskestrand, Neufeld, Lilly, Cabling, Go, Wasko,

Lawrence, Singh, Englund, Wermers, and Howe.  I respectfully RECOMMEND that the Motion

be GRANTED IN PART and DENIED IN PART.

**I.  STANDARD OF REVIEW**

The plaintiff is proceeding *pro se*, and I must liberally construe his pleadings.  Haines v.

Kerner, 404 U.S. 519, 520-21 (1972).  Nevertheless, I cannot act as advocate for a *pro se* litigant,

who must comply with the fundamental requirements of the Federal Rules of Civil Procedure.

Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991).

The standard of review for a motion to dismiss for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1) is described as follows:

> Generally, Rule 12(b)(1) motions to dismiss for lack of subject matter jurisdiction take two forms. First, a facial attack on the complaint's allegations as to subject matter jurisdiction questions the sufficiency of the complaint. In reviewing a facial attack on the complaint, a district court must accept the allegations in the complaint as true.
>
> Second, a party may go beyond allegations contained in the complaint and challenge the facts upon which subject matter jurisdiction depends. When reviewing a factual attack on subject matter jurisdiction, a district court may not presume the truthfulness of the complaint's factual allegations. A court has wide discretion to allow affidavits, other documents, and a limited evidentiary hearing to resolve disputed jurisdictional facts under Rule 12(b)(1). In such instances, a court's reference to evidence outside the pleadings does not convert the motion to a Rule 56 motion.
>
> However, a court is required to convert a Rule 12(b)(1) motion to dismiss into a Rule 12(b)(6) motion or a Rule 56 summary judgment motion when resolution of the jurisdictional question is intertwined with the merits of the case. The jurisdictional question is intertwined with the merits of the case if subject matter jurisdiction is dependent on the same statute which provides the substantive claim in the case.

Holt v. United States, 46 F.3d 1000, 1003 (10th Cir. 1995) (citations omitted).

In ruling on a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(1), the court must accept the plaintiff's well-pleaded allegations as true and must construe all reasonable inferences in favor of the plaintiff. City of Los Angeles v. Preferred Communications, Inc., 476 U.S. 488, 493 (1986); Mitchell v. King, 537 F.2d 385, 386 (10th Cir. 1976). The complaint must contain

specific allegations sufficient to establish that it plausibly supports a claim for relief. <u>Alvarado v. KOB-TV, L.L.C.</u>, 493 F.3d 1210, 1215 n.2 (10th Cir. 2007). "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." <u>Scheuer v. Rhodes</u>, 416 U.S. 232, 236 (1974), overruled on other grounds by <u>Davis v. Scherer</u>, 468 U.S. 183 (1984).

## II. BACKGROUND

The plaintiff is incarcerated by the Colorado Department of Corrections ("DOC"). He filed his Amended Prisoner Complaint (the "Complaint") on March 6, 2008 [Doc. #28]. The Complaint details numerous events which occurred over the course of twelve years, including the following:[1]

1. On February 8, 1995, medical personnel at the Limon Correctional Facility sent the plaintiff to Dr. Eric Carlson for an orthopedic consultation because his hands were swelling, he was losing feeling in his hands, and he was having a difficult time holding things. He also had a large ganglion in his left wrist that was causing pain. Dr. Carlson recommended excision of the ganglion and lab tests to evaluate the swelling in his hands. *Complaint*, p. 3.[2]

2. The ganglion was not removed. <u>Id.</u>

---

[1]In his Complaint, the plaintiff makes numerous references to supporting documents. The supporting documents are not attached to the Complaint; they are found in Document #17, which was submitted with a previously filed amended complaint. I construe the documents as having been submitted with the extant Complaint. In his Complaint, the plaintiff often misquotes the contents of the documents. In those instances, I quote directly from the documents.

[2]I cite to the page numbers of the Complaint as they are assigned by the plaintiff.

3.   After years of complaining about his pain, the plaintiff saw Dr. Barry Broughton on December 17, 1998.  Dr. Broughton diagnosed the plaintiff with chronic tenosynovitis and recommended that the plaintiff continue taking Motrin, wear wrist splints, and receive injections in the region of the tendon.  Id.

4.   The plaintiff did not receive injections and the splints were taken by medical staff at the Arkansas Valley Correctional Facility.  Id.

5.   The plaintiff was in pain for another year.  On September 1, 1999, he saw Dr. Thomas Eskestrand, an orthopedic doctor and hand surgeon.  Dr. Eskestrand recommended excision of the ganglion.  Id. at 3 and 3A.

6.   While going through copies of his medical files, the plaintiff found a form entitled "State of Colorado Department of Corrections Consulting Physicians Report Form" dated July 15, 1999.  The form is addressed to Dr. Eskestrand and is signed by a DOC physician.  The form requests that Dr. Esckestrand evaluate the plaintiff for "Ganglion cyst L wrist" and provides instructions for sending a final report to the DOC.  The form states in pertinent part:

> We recognize the doctor/patient relationship is very important: however, due to limitations we have regarding services that are provided by the DOC and also transportation issues, we ask that you do not discuss with the inmate specific types of care, recommendations of specific dates for follow-up.  These can pose security problems for the system, i.e., escape, as well as set up expectations that may not be fulfilled.  Please contact us directly to set up any follow-up appointments . . . .[3]

_____

[3]The plaintiff characterizes the form as an "agreement between DR Eskestrand and CDOC askes [sic] him not to tell me whats [sic] wrong with me . . . ."  The form does not request that Dr. Eskestrand refrain from discussing diagnoses with the patient, however; it merely requests that Dr. Eskestrand not discuss specific types of care or specific dates for follow-up appointments.  Moreover, there is no place for Dr. Eskestrand to sign the form, so the plaintiff's characterization of the form as an "agreement" is not accurate.

<u>Id.</u> at p. 3; Doc. #17, p. 5.[4]

7.    On December 1, 1999, the plaintiff received his surgery, but when the bandage was removed from his arm, the ganglion was still there and it "hurt ten times worse." *Complaint*, p. 3A.

8.    On December 23, 1999, the plaintiff attended a follow up visit with Dr. Eskestrand. The plaintiff told Dr. Eskestrand that he had missed the ganglion. <u>Id.</u> Dr. Eskestrand documented the following: "Patient is approximately 3 weeks post ganglion removal left wrist. He is concerned some about the swelling. Still has some pain and tenderness. No wrist splint. Sutures have been removed." <u>Id.</u> and Doc. #17, p. 8. The plaintiff became loud with Dr. Eskestrand and was removed from the office. *Complaint*, p. 3A.

9.    The plaintiff "raised hell about it" with Dr. Neufeld at the Colorado State Penitentiary. Dr. Neufeld stated that he did not care if the plaintiff received proper medical treatment and that he was not concerned with the swelling. He refused to document that the ganglion was still there. <u>Id.</u> at pp. 3A-B.

10.    The plaintiff was moved from the Colorado State Penitentiary to Fremont Correctional Facility where he "told every PA, Doctor, Nurse and anyone that would listen that the ganglion had not been removed" and that it was still causing him pain. Nothing was done and nobody would document it in his records. <u>Id.</u>

11.    The plaintiff "raised hell" until he saw Dr. Lindsay Lilly on August 16, 2001. <u>Id.</u> Dr. Lilly documented that the plaintiff "complains of paresthetic tingling of the hands present 24

_____

[4]The pages of Doc. #17 are not consecutively numbered. Therefore, I cite to the page numbers of Doc. #17 as they are assigned by the Court's docketing system.

5

hours a day seven days a week"; he "drops objects frequently"; and he has degenerative joint disease and probable carpal tunnel syndrome.  Id. and Doc. #17, pp. 9, 10.  Dr. Lilly would not document in the record that the ganglion had not been removed.  *Complaint*, p. 3A.  Dr. Lilly recommended an EMG/NCV of the upper extremities; continuation of Neurontin; a lumbar MRI scan; Glucosamine and Chondroitin for joint pain in the extremities; and Vitamin B6 because it "may reduce his hand symptoms."  Id. and Doc. #17, p. 10.

12.  "After another year of raising hell," the plaintiff was seen by Dr. Louis Cabling[5] on August 2, 2002, for an Electromyography.  In his report, Dr. Cabling states that the plaintiff has a bony mass in his left wrist area and that his symptoms are suggestive of carpal tunnel syndrome.  *Complaint*, p. 3A and Doc. #17, pp. 12, 14.

13.  Dr. Cabling performed another Electromyography a year later.  The test results were worse.  Dr. Cabling told the plaintiff that he needed surgery on both hands "but because of what was done to [his] left wrist [he] should not let CDOC or the State Hospital" perform the surgery.  *Complaint*, p. 3A.

14.  On November 19, 2002, the plaintiff filed a Step 1 Grievance stating:

> REQUEST: Medical treatment!  I have carpal tunnel syndrome, Medical refuses to give me any medication adequate to combat the intense pain in my hands.  Medical is also trying to force me to see the same Doctor that did a surgical operation on my left wrist to remove a ganglion, A GANGLION WHICH WAS NOT REMOVED EVEN THOUGH SURGERY TO REMOVE IT WAS PREFORMED [sic] BY SAID DOCTOR, I TOLD THAT DOCTOR HE MISSED THE GANGLION HIS RESPONCE [sic] WAS, "WELL I TOOK A CHUNK OF SOMETHING OUT OF THERE!"  I informed the Doctors and nurses at CSP, FCF and

---

[5]The plaintiff has misspelled the names of defendants Cabling and Lawrence.  I use the spelling provided by the defendants in their Motion.

CCF of what the Doctor had done to me, There [sic] responce [sic] was to send me back to him to redo the surgery, THEY MUST THINK ME STUPED [sic], And now the Doctor here wants me to go back to this Quack to have him perform a surgery that is a hundred times more delicate, NOT IN THIS LIFE!!!!!

My requests is [sic] to #1 be given adequate pain medication, and #2 to be taken to a Doctor that specializes in ganglion removal and carpal tunnel syndrome surgery. I further suggest that someone look into that Doctors [sic] actions, "The one that F-ed up the Ganglion surgery" befor [sic] you have a real suite [sic] on your hands.!!!

*Complaint*, p. 3A; Doc. #17, p. 15.

15. Dr. Neufeld responded to the grievance on December 6, 2002. Dr. Neufeld stated that Dr. Eskastrand is the DOC hand surgeon; Dr. Neufeld has knowledge of Dr. Eskastrand's competency; Dr. Eskastrand's reputation is highly regarded; and the plaintiff could see another physician at his own expense. In discussing pain control, he stated that "[o]ne might consider giving you an adjuvant like Elavil if you desire." *Complaint*, p. 3B; Doc. #17, p. 16.

16. In December 2002 and January 2003, the plaintiff filed Step 2 and Step 3 grievances requesting that he be provided with pain medication and a doctor specializing in ganglion removal and carpal tunnel surgery. *Complaint*, p. 3B; Doc. #17, pp. 17-19. He also wrote a letter to the State Board of Medical Examiners. Doc. #17, pp. 20-22. The Board responded that he had to exercise his rights through the DOC's internal grievance process, and if his concerns were not resolved he could the resubmit his complaint to the Board along with documentation regarding the outcome of the grievance process.[6] Id. at p. 23.

---

[6]The plaintiff alleges that in response to his letter, the Board requested his medical files. *Complaint*, p. 3B. He cites to a letter from June Nieto, Administrative Assistant for the Board, in support of this statement. Id. (citing to documents #14a, b, c, and d). Id. However, Ms. Nieto does not request medical files from the plaintiff; she requests only that he provide proof that he

17.   "A short time later," the plaintiff was taken to the State Hospital where he saw Dr. Gary Go.  Dr. Go told him that the ganglion had been removed.  Dr. Go was trying to cover for the DOC and Dr. Eskestrand.  Dr. Go offered to do the carpal tunnel surgery at the State Hospital, but "after he had just sat there and bald faced lied to me and because of what had happened with the ganglion sergery [sic] I told him I needed some time to think about it." *Complaint*, p. 3B.

18.   A week later, the plaintiff was moved from the Buena Vista Correctional Facility to the Arkansas Valley Correctional Facility where he saw PA Theodore Lawrence.  PA Lawrence asked the plaintiff if he wanted to be scheduled for the surgery with Dr. Go, and the plaintiff informed him that he still needed time to think about it.  PA Lawrence told the plaintiff he had been upgraded to Chronic Care for his hands, spurs on his spine, and the carpal tunnel syndrome. Id. at pp. 3B-3C.

19.   "About a week later" the plaintiff turned in a medical kite and told PA Lawrence to go ahead and schedule the surgery.  He was called to the medical department to see Dr. Patty Beecroft.  Dr. Beecroft informed the plaintiff that he had been scheduled for the surgery.  "That was in early 2004."  He was given Tegratol until the surgery could be performed.  Id. at p. 3C.

20.   The plaintiff was seen by Dr. Beecroft every six months for two years in order to renew the medications and assure the plaintiff that he was scheduled for surgery.  His next three visits were "missed" because "[o]f course the statute of limitations" for a civil action had run out.  The plaintiff turned in a kite and threatened to file a civil action.  In retaliation for the

exhausted his DOC grievance remedies.

threat, Dr. Beecroft took him off Chronic Care status.  He was also told that he would have to place a medical kite for each medical issue and pay $5.00 per issue.  Id.

21.   On January 3, 2007, the plaintiff filed a Step One grievance regarding his removal from chronic care status.  Id.; Doc. #17, p. 24.  Dr. Beecroft responded that the plaintiff's diagnoses of degenerative arthritis, carpal tunnel syndrome, spinal spurs, and allergies did not fall under chronic care even though they may be persistent conditions.  She informed him that he would have to "put a kite into sick call for whichever condition you want treated."  Id.  Kelly Wasko responded to his Step Two grievance.  She informed him that his diagnoses are not recognized under chronic care.  *Complaint*, p. 3C; Doc. #17, p. 25.

22.   Ms. Wasko also responded to a subsequent grievance filed by the plaintiff.  She stated that Dr. Go offered a surgical intervention option and the plaintiff chose to think about it. She told him to place a kite to request a surgical consult.  *Complaint*, p. 3D; Doc. #17, p. 27.

23.   On February 4, 2007, the plaintiff placed a kite requesting a surgical consult. *Complaint*, p. 3C; Doc. #17, p. 28.  On December 9, 2007, he was charged $5.00 for a "Medical No-Show."  *Complaint*, p. 3D; Doc. #17, p. 29.   Ms. Wasko lied to the plaintiff about the surgical consult and stole another $5.00 just to be vindictive.  *Complaint*, p. 3D.

24.   On February 6, 2007, the plaintiff filed a Step Three grievance wherein he stated that he had been told by PA Lawrence and Dr. Beecroft "on no less than" twenty medical appointments that he was scheduled for the surgery; he had informed Dr. Go that he would not sign a release for him to do the surgery because the State Hospital did not have the proper facilities or technical surgeons; other inmates were taken to private hospitals to have carpal

tunnel surgery, and he would settle for no less; and his charts have been missing for more than three years. *Complaint*, p. 3D; Doc. #17, p. 30.

25.   On March 5, 2007, the plaintiff filed a Step One grievance seeking the return of his $5.00 because he did not turn in a medical kite for an appointment with medical; he turned in a kite for a surgical consult. *Complaint*, p. 3D; Doc. #17, p. 33.  In response, C. Martinez wrote that surgical consults are conducted by a DOC provider and if a consult is warranted, the plaintiff would then be referred to a surgeon.  Id.  The plaintiff filed Step Two and Three grievances on the same issue and received the same response from Ms. Wasko and Ms. Martinez. *Complaint*, p. 3E; Doc. #17, pp. 34-35.

26.   On July 6, 2007, the plaintiff got into a fight in the chow hall.  The plaintiff was taken to the medical department for a body check.  He informed the nurse that both of his hands were broken.  The nurse stated that he would have to be brought to medical at a later date.  The plaintiff had to set the bones himself.  He turned in two medical kites and did not receive responses.  He was given some tape to immobilize his broken fingers.  His right thumb and a finger are still deformed. *Complaint*, p. 3E.

27.   On another occasion, the plaintiff was bitten by a spider while in his cell. The bite became infected, and the infection covered 90% of his right calf.  He visited PA Lawrence in the medical department on three occasions.  The first time, Lawrence gave the plaintiff hydrocortisone cream which had no effect.  The second time, Lawrence told the plaintiff he would increase the dosage of the hydrocortisone, but then gave him the same cream.  The third time, the infection was so bad that the plaintiff's calf was turning black.  Lawrence had PA Singh come in and look at the leg.  Singh and Lawrence "had a great big laugh fest over how the

infection had spread." Id.  After months of treatment, the leg was so bad the plaintiff could hardly walk on it. Dr. Beecroft put him on such large doses of steroids that he could not sleep for weeks.  It took months for his leg to heal.  Id. at p. 3F.

28.  On another occasion, the plaintiff visited the medical department on a sick call.  He was seen by PA Lawrence.  The plaintiff informed Lawrence that his medication had been changed from Benadryl to CTM without his knowledge and that he is allergic to CTM. Nevertheless, the plaintiff used the CTM because his allergies are so bad that he cannot function without some type of antihistamine.  The plaintiff told Lawrence that the CTM gave him a rash which was covering him from head to toe.  Lawrence told the plaintiff he would have to fill out another sick call kite to be seen for the rash.  "I got pissed of[f] about it and one of the nurses told me to turn in a kite and he would see to it that the medication got changed without charging me the co-pay."  The plaintiff turned in the kite and was charged a co-pay.  He was seen in the medical department three days later by Lawrence.  Lawrence told him he had a sunburn and changed his medication.  The rash disappeared.  Id.

29.  The medical department has recently started requiring the inmates to fill out separate medical kites for each distinct medical issue.  The inmates automatically get charged $5.00 per medical visit, and $10.00 for each emergency visit.  Id. at 3F-G; Doc. #17, p. 37.

30.  The medical department has stopped issuing medical appointment slips to the inmates to inform them of an appointment.  Instead, a list is placed outside the pods behind a door and on television screens.  Not all of the inmates have access to the television screens.  The medical department will not page inmates over the intercom nor will it place the sick call list inside the pods where the inmates have easier access to them.  Id. at p. 3G.

11

31.  The plaintiff has lost feeling in his hands; they are cold all the time; and he cannot hold onto anything for more than a few minutes without dropping it or experiencing cramping in his hands.  Id.

32.  The plaintiff has arthritis in his hands, hips, knees, neck, and lower back.  The medical department will give him Viox at $3.00 each, but not Glucosimin at .08 cents each.  Id.

The Complaint asserts seven claims.  All of the claims allege violations of the Eighth and Fourteenth Amendments.  Claim One is based on the treatment of the plaintiff's ganglion cyst. Claim Two is based on the treatment of his carpal tunnel syndrome.  Claim Three alleges inadequate medical treatment for his hands after he was engaged in a fight.  Claim Four alleges inadequate medical treatment for a rash he suffered when PA Lawrence changed his medication from Benadryl to CTM.  Claim Five is based on the DOC's inmate co-pay policies.  Claim Six alleges that the plaintiff was not informed that five years ago he had high glucose levels.  Claim Seven alleges that several defendants took money from the plaintiff's inmate account for medical co-pay charges without a signed release from him.  The plaintiff seeks compensatory, declaratory, and injunctive relief.  Id. at p. 8B.

### III.  ANALYSIS

This action is brought under 42 U.S.C. § 1983, which provides:

> Every person who, under color of any statute, ordinance,
> regulation, custom, or usage, of any State, . . . subjects, or causes
> to be subjected, any citizen of the United States . . . to the
> deprivation of any rights, privileges, or immunities secured by the
> Constitution and laws, shall be liable to the party injured in an
> action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983.

### A.  Eleventh Amendment Immunity

The defendants assert that the Court does not have subject matter jurisdiction over the plaintiff's claims insofar as they are asserted against them in their official capacities. *Motion*, p. 4. The defendants are asserting a facial challenge to the Complaint's allegations. Therefore, I accept the allegations of the Amended Complaint as true. Holt, 46 F.3d at 1003.

The Eleventh Amendment bars suits in federal courts against unconsenting states by the state's own citizens and by citizens of another state. Port Auth. Trans-Hudson Corp. v. Feeney, 495 U.S. 299, 304 (1990). Eleventh Amendment immunity "constitutes a bar to the exercise of federal subject matter jurisdiction." Fent v. Okla. Water Res. Bd., 235 F.3d 553, 559 (10th Cir. 2000) (emphasis omitted). Eleventh Amendment immunity applies to suits arising under 42 U.S.C. § 1983. Quern v. Jordan, 440 U.S. 332, 345 (1979).

The Eleventh Amendment precludes federal jurisdiction over state officials acting in their official capacities as to retroactive monetary relief, but not as to prospective injunctive relief. Pennhurst, 465 U.S. at 102-03,105-06.

The defendants are employed by the DOC. *Complaint*, pp. 2-3. The DOC is an agency or subdivision of the State of Colorado. Consequently, the Eleventh Amendment bars suit against these defendants in their official capacities for retroactive monetary relief. I respectfully RECOMMEND that the Motion be GRANTED to the extent it seeks dismissal of the claims against the defendants in their official capacities for retroactive monetary relief based on Eleventh Amendment immunity.

## B. Statute of Limitation

The defendants assert that Claims One and Two are barred by the statute of limitation. *Motion*, pp. 4-5. Actions asserted under 42 U.S.C. § 1983 are subject to the general personal injury limitation period of the state in which the action arose. Hunt v. Bennett, 17 F.3d 1263, 1265 (10th Cir. 1994). The appropriate statute of limitation for §1983 actions arising in Colorado is two years. Id. at 1266; Colo. Rev. Stat. § 13-80-102. Federal law rather than state law determines when a cause of action accrues. See Industrial Constructors Corp. v. United States Bureau of Reclamation, 15 F.3d 963, 968 (10th Cir. 1994). "The statute of limitations begins to run when the plaintiff knows or has reason to know of the existence and cause of the injury which is the basis of his action." Id. at 969. "A civil rights action accrues when facts that would support a cause of action are or should be apparent." Fratus v. Deland, 49 F.3d 673, 675 (10th Cir. 1995).

Claim One alleges violations of the Eighth and Fourteenth Amendments based on the treatment of the plaintiff's ganglion cyst. Claim Two alleges violations of the Eighth and Fourteenth Amendments based on the treatment of his carpal tunnel syndrome. The plaintiff's allegations regarding the treatment of these conditions are tedious and lengthy. Nevertheless, it is clear from the allegations that the plaintiff's claims as against defendants Eskastrand, Lilly, Cabling, Neufeld, and Go are barred by the statute of limitation.

The allegations against Dr. Eskestrand make clear that the plaintiff's last contact with him was on December 23, 1999, when he attended a follow up visit. *Complaint*, p. 3A. The plaintiff knew of the existence and cause of the injury allegedly caused by Dr. Eskestrand

because he further alleges that he informed the doctor that he had failed to remove the ganglion. Id. at pp. 3A, 4A.

The only allegations regarding Dr. Lilly describe a visit on August 16, 2001. Id. at p. 3A. The plaintiff alleges that Dr. Lilly did not inform him that he had carpal tunnel syndrome. Id. at p. 5A. He did not see Dr. Lilly's diagnosis "untill [sic] late 2002 early 2003." Thus, the plaintiff knew of any injury caused by Dr. Lilly at the time of his visit by "early 2003."

In his description of the Nature of the Case, the plaintiff alleges that he had an initial visit with Dr. Cabling on August 2, 2002, and a second visit a year later. Id. at p. 3A. The plaintiff mentions Dr. Cabling again in Claim One, id. at p. 4A, but does not allege any wrongdoing. In Claim Two, he alleges that on August 2, 2002, Dr. Cabling told him he needed surgery on both hands, "but made a contradictory reccomendation [sic] in his report which I gained access to some months later!" Id. at p. 5A. Thus, the plaintiff knew of the alleged injury caused by Cabling "some months" after August 2, 2002.

The allegations against Dr. Neufeld concern his care of the plaintiff and his subsequent response to a Step One grievance on December 6, 2002. Id. at pp. 3A-B, 4A-B; Doc. #17, pp. 15-17. These events occurred in 2002 and 2003. Id. Therefore, the plaintiff knew of any injury caused by Dr. Neufeld in 2002 and 2003.

The plaintiff does not state the date of his visit with Dr. Go. However, he alleges that it was "[a] short time" after writing to the State Board of Medical Examiners on November 14, 2003, *Complaint*, p. 3B and Doc. #17, pp. 20-22, and prior to seeing Dr. Beecroft in "early 2004." *Complaint*, p. 3C. Therefore, the plaintiff knew of any injury caused by Dr. Go prior to "early 2004."

15

The plaintiff filed his initial complaint on December 12, 2007.[7]  Absent tolling, all claims

accruing prior to December 12, 2005, are barred.  As discussed above, the plaintiff's claims

against defendants Eskastrand, Lilly, Cabling, Neufeld, and Go accrued in 2004 or earlier and

are barred by the statute of limitation.

The issue of tolling is governed by Colorado state law.  See Fratus v. DeLand, 49 F.3d

673, 675 (10th Cir. 1995).  Colorado's equitable tolling provisions are "limited to situations in

which either the defendant has wrongfully impeded the plaintiff's ability to bring the claim or

truly extraordinary circumstances prevented the plaintiff from filing his or her claim despite

diligent efforts."  Dean Witter Reynolds, Inc. v. Hartman, 911 P.2d 1094, 1099 (Colo. 1996).

The plaintiff does not allege any "truly extraordinary circumstances" which prevented

him from filing an action against defendants Eskastrand, Lilly, Cabling, Neufeld, and Go, nor

does he assert that the defendants wrongfully impeded his ability to bring such an action.  To the

contrary, he concedes that, as early as 2002, he threatened to bring a law suit based on the

inadequate medical care he received over the past seven years.  *Complaint*, p. 3B, Doc. #17, pp.

15, 17.

The plaintiff claims that "[t]he statute of limitations does not apply to ongoing deliberate

indifference."  *Plaintiff's Response to Defendant's Motion to Dismiss*, [Doc. #68] (the

---

[7]I am aware that a complaint is filed for purposes of the statute of limitation when it is
tendered to the Clerk of the Court with a motion to proceed *in forma pauperis*.  Jarrett v. U.S.
Sprint Comm'cns. Co., 22 F.3d 256, 259 (10th Cir. 1994).  See also Calvert v. Roadway Exp.,
Inc., 32 Fed. Appx. 510, 512 (10th Cir. Feb. 19, 2002); Green v. Busha, 59 F.3d 178, 1995 WL
386489, at *1-2 (10th Cir. June 30, 1995).  The plaintiff filed a motion to proceed *in forma
pauperis* on September 19, 2007 [Doc. #1].  However, he did not tender a complaint with the
motion, and he was ordered to cure this deficiency within thirty days.  *Order Directing Clerk to
Commence Civil Action and Directing Plaintiff to Cure Deficiency*, pp. 2-3.  Therefore, the filing
date of the plaintiff's initial complaint does not relate back to the filing date of the IFP motion.

"Response"), p. 5.  However, the Tenth Circuit Court of Appeals has not extended the continuing violation doctrine to section 1983 actions.  Hunt v. Bennett, 17 F.3d 1263, 1266 (10th Cir. 1994); Slusher v. Gabler, 36 F.3d 1105, 1994 WL 504310, *2 (10th Cir. Sept. 15, 1994).

I respectfully RECOMMEND that the Motion be GRANTED insofar as it seeks dismissal of the allegations in Claims One and Two against defendants Eskastrand, Lilly, Cabling, Neufeld, and Go as barred by the statute of limitation.  Because these defendants are not named in the plaintiff's remaining claims, I further RECOMMEND that they be dismissed from this action.

It is not clear from the allegations of the Complaint that Claims One and Two are time-barred as against defendants Wasko, Lawrence, Englund, Singh, and Wermers.[8]  Therefore, I RECOMMEND that the Motion be DENIED to the extent it seeks dismissal of Claims One and Two in their entirety.

### C.  Personal Participation

The defendants argue that defendants Lilly, Cabling, Go, Singh, Englund, Wermers, and Wasko cannot be held liable for the alleged constitutional violations because the plaintiff has failed to allege that any of the defendants personally participated in the violations.  *Motion*, pp. 6-8.  Because I find that the claims against Lilly, Cabling, and Go are barred by the statute of limitation, I do not address this argument as to these defendants.

An individual cannot be held liable in a section 1983 action unless he caused or participated in an alleged constitutional violation.  McKee v. Heggy, 703 F.2d 479, 483 (10th

---

[8]The defendants assert that "any claim relating to alleged conduct occurring more than two years prior to the filing of the action is time barred," but they do not cite any authority to support this assertion.  *Motion*, p. 5.  Therefore, I decline to address it.

Cir. 1983). Respondeat superior is not within the purview of section 1983 liability. Id. In order for a supervisor to be liable under section 1983, there must exist a causal connection or an affirmative link "between the constitutional deprivation and either the supervisor's personal participation, his exercise of control or direction, or his failure to supervise." Butler v. City of Norman, 992 F.2d 1053, 1055 (10thCir. 1993); see also Rizzo v. Goode, 423 U.S. 362, 371 (1976). Without a showing of direct responsibility for the alleged violations, liability will not be imposed on a supervisory official. Id.

Defendants Singh, Englund, and Wermers are named in Claims Two, Five, Six, and Seven. Because I recommend dismissal of Claims Five, Six, and Seven for failure to state a claim upon which relief can be granted, I address their personal participation only as to Claim Two.

In Claim Two, the plaintiff mentions these defendants once. He states that "[a]fter waiing [sic] three years for this sergery [sic] that I was told I was schedualed [sic] for by DR BeeCroft, Danny Englund, Theodore Laurence, Kelly Wasko, Tejinder Singh, Joseph Wermers, I filed a grievance . . . ." *Compliant*, p. 5A. These allegations, without more, are not sufficient to state a plausible constitutional violation against Singh, Englund, and Wermers regarding the treatment of his carpal tunnel syndrome.

Defendant Wasko is named in Claims One and Two. *Complaint*, pp. 4C, 5A. The plaintiff alleges that she retaliated against him for filing grievances. Id. These allegations are sufficient to allege personal participation in a constitutional violation.[9]

---

[9]Because the defendants do not address the merits of the claims against Wasko, neither do I.

I respectfully RECOMMEND that the Motion be DENIED AS MOOT insofar as it seeks dismissal of defendants Lilly, Cabling, and Go for failure to allege personal participation and GRANTED to the extent it seeks dismissal of Claim Two as against defendants Singh, Englund, and Wermers for lack of personal participation.  In addition, because I recommend dismissal of Claims Five, Six, and Seven (the only other claims which name these defendants), I RECOMMEND that defendants Singh, Englund, and Wermers be DISMISSED from this action. I further RECOMMEND that the Motion be DENIED insofar as it seeks dismissal of Claims One and Two as against defendant Wasko for failure to allege personal participation.

### D.  Fourteenth Amendment Claims

The defendants argue that, to the extent Claims Five, Six, and Seven allege violations of the Equal Protection Clause, the claims must be dismissed because the plaintiff does not allege that he is being treated differently from similarly situated individuals.  *Motion*, pp. 13-14.  "The Equal Protection Clause of the Fourteenth Amendment commands that no State shall deny to any person within its jurisdiction the equal protection of the laws, which is essentially a direction that all persons similarly situated should be treated alike."  City of Cleburne v. Cleburne Living Ctr., 473 U.S. 432, 439 (1985) (quotations and citation omitted).  Claims Five, Six, and Seven do not contain any allegations which would invoke the Equal Protection Clause.

In addition, I note that Claims One, Two, Three, and Four all allege "Deliberate Indifference to Serious Medical Needs, Failure to Act, Violations of my 8th and 14th Amendment Rights."  None of these claims specify which provision of the Fourteenth Amendment is being invoked, and none of the claims contain allegations which--even liberally construed--plausibly support a claim under the Fourteenth Amendment.

I respectfully RECOMMEND that all of the plaintiff's claims for violations of the Fourteenth Amendment be DISMISSED.

### E.   Claim Four

Claim Four alleges that defendant Lawrence violated the plaintiff's Eighth Amendment rights when he required the plaintiff to turn in a separate medical kite to be seen for a rash he suffered when his medication was changed from Benadryl to CTM. *Complaint*, p. 6.  The defendants assert that Claim Four fails to state an Eighth Amendment claim. *Motion*, pp. 8-9.

A prison official's deliberate indifference to an inmate's serious medical needs violates the inmate's Eighth Amendment right to be free from cruel and unusual punishment.  See Estelle v. Gamble, 429 U.S. 97, 104 (1976).  "This is true whether the indifference is manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care."  Id. at 104-05.  To establish a claim for deliberate indifference, a plaintiff must prove both an objective component and a subjective component.

The objective component is met if the inmate's medical need is sufficiently serious. Farmer v. Brennan, 511 U.S. 825, 834 (1994).  A medical need is sufficiently serious "if it is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention."  Hunt v. Uphoff, 199 F.3d 1220, 1224 (10th Cir.1999) (quoting Ramos v. Lamm, 639 F.2d 559, 575 (10th Cir. 1980)).         The subjective component to a deliberate indifference claim is met if a prison official "knows of and disregards an excessive risk to inmate health or safety."  Farmer, 511 U.S. at 837.  "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."  Id.

The plaintiff alleges that he visited the medical department on a sick call and was seen by PA Lawrence. The plaintiff informed Lawrence that his medication had been changed from Benadryl to CTM without his knowledge, and that he is allergic to CTM. Nevertheless, the plaintiff used the CTM because his allergies are so bad that he cannot function without some type of antihistamine. The plaintiff told Lawrence that the CTM gave him a rash which was covering him from head to toe. Lawrence told the plaintiff he would have to fill out another sick call kite to be seen for the rash. "I got pissed of[f] about it and one of the nurses told me to turn in a kite and he would see to it that the medication got changed without charging me the co-pay." The plaintiff turned in the kite and was charged a co-pay. He was seen in the medical department three days later by Lawrence; Lawrence told him he had a sunburn and changed his medication; and the rash disappeared. Id.

The plaintiff argues that Lawrence was deliberately indifferent to a serious medical need in violation of the Eighth Amendment because he would not examine his rash immediately but instead required the plaintiff to have his rash addressed in a separate visit. The plaintiff's allegations do not rise to the level of a constitutional violation. There are no factual allegations from which to reasonably infer that Lawrence knew of and disregarded an excessive risk to the plaintiff's health. To the contrary, the plaintiff alleges that he was seen for his rash within three days, Lawrence treated the rash, and the rash was cured.

I respectfully RECOMMEND that the Motion be GRANTED insofar as it seeks dismissal of the allegations in Claim Four of a violation of the Eighth Amendment.

## F.   Claim Five

The defendants assert that Claim Five fails to state a claim for relief under the Eighth Amendment.  *Motion*, pp. 9-12.  In Claim Five, the plaintiff challenges the application of a Colorado statute which requires that inmates be assessed a $5.00 co-pay for each medical visit. *Complaint*, pp. 6A-6C.  Specifically, the plaintiff states:

> Plaintiff is not stating that the Inmate Co-Pay in and of it's self [sic] is unconstitutional as there is no constitutional prohibition against charging an inmate a fee for medical services, [if] in fact the inmate can afford that fee!
>
> 1.   The plaintiff states that the inmate co-pay is unconstitutional as applied to the CDOC inmate population and myself because in comparison to the inmate income it constitutes cruel and unusual punishment in violation of the eighth and fourteenth amendments.

Id. at 6A.

As an initial matter, to the extent the plaintiff is attempting to assert Claim Five on behalf of other inmates, he has not sought class certification under Fed. R. Civ. P. 23, nor can he do so without being represented by counsel.  Fymbo v. State Farm Fire & Cas. Co., 213 F.3d 1320, 1321 (10th Cir.2000) (holding that a class representative cannot appear pro se ).  Accordingly, I RECOMMEND that Claim Five be limited to the plaintiff individually.

Almost all of the allegations in Claim Five pertain to the effects of the inmate co-pay requirement on the inmate population as a whole.  The only allegation that is specific to the plaintiff is that "Kelly Wasko, Theodore Laurence [sic], Tejinder [sic] Singh, Patty Beecroft, Danny englund [sic], Joseph Wermers, Debra Howe, have done these things to me they have refused me medical treatment as recently as 12-9-07 and forced me to put in multiple kites for medical treatment."  *Complaint*, p. 6C.  This conclusory allegation is not sufficient to state a

claim for relief under the Eighth Amendment. There are no factual allegations from which to infer that the plaintiff had a sufficiently serious medical need or that defendants Wasko, Lawrence, Singh, Beecroft, Englund, Wermers, or Howe knew of and disregarded a serious risk to the plaintiff's health.

I respectfully RECOMMEND that the Motion be GRANTED insofar as it seeks dismissal of Claim Five.

### G. Claim Six

The defendants assert that Claim Six fails to state a claim under the Eighth Amendment. *Motion*, pp. 12-13. Claim Six alleges in its entirety:

> I was given access to my new medical file and in it were two pages of test results, Tests that were given five years ago! In those test results it stated very clearly that I had very high leverls [sic] of Glueclose [sic]! Meaning Possable [sic] Diabetic! I have never been informed of this! Given a follow up for it! Nothing!!
>
> I have given and made countless complaints to Medical Staff here at AVCF that Coinside [sic] and are clear symptoms and worning [sic] signs of Diabetes. I have told PA Laurence [sic], PA Singh, MD BeeCroft that my arm kept going numb! That I was studdering [sic] and couldn't think clearly that I had blurred vision and was seeing dark spots on occations [sic] Sores on my feet, that I can't sleep and that I have to Pee every ten minutes, That I get shakey [sic] and dizzy sometimes when I don't eat!

*Complaint*, p. 6C.

The plaintiff has failed to allege facts from which it could be inferred that defendants Lawrence, Singh, and Beecroft knew of and disregarded a serious risk to the plaintiff's health. There are no factual allegations from which to infer that these defendants were aware that the plaintiff had high levels of glucose or that they disregarded an excessive risk to the plaintiff's health. There are only conclusory allegations that the plaintiff became aware that he had high

23

glucose levels five years ago and that at unspecified times he complained to the defendants of symptoms that may or may not be associated with diabetes.

I respectfully RECOMMEND that the Motion be GRANTED insofar as it seeks dismissal of Claim Six.

## H.   Claim Seven

The defendants assert that Claim Seven fails to state an Eighth Amendment claim. *Motion*, pp. 13.  Claim Seven states in its entirety:

> Kelly Wasko, Theodor Laurence [sic], Tejinder [sic] singh, Patty GeeCroft [sic], Danny Englund, Joseph Wermers, Debra How [sic], Have removed money from my inmate account for medical co-pay charges without any signed release from me.

*Complaint*, p. 6C.

The plaintiff has failed to allege any facts to plausibly state a claim for violation of his Eighth Amendment rights.  The Eighth Amendment provides that "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted."  U.S. Const. amend. VIII.  The Eighth Amendment prohibition against cruel and unusual punishment requires prison officials to provide humane conditions of confinement by ensuring that inmates receive adequate food, clothing, shelter, and medical care.  Farmer v. Brennan, 511 U.S. 825, 832 (1994) (quotations and citations omitted).  The Eighth Amendment does not guarantee that money may only be removed from an inmate's account upon consent of the inmate.

I respectfully RECOMMEND that the Motion be GRANTED insofar as it seeks dismissal of Claim Seven.

## I.  Qualified Immunity

The defendants assert that defendants Lilly, Cabling, Go, Singh, Englund, and Wermers are entitled to qualified immunity.  *Motion*, pp. 14-15.  Qualified immunity shields government officials sued in their individual capacities from liability for civil damages provided that their conduct when committed did not violate "clearly established statutory or constitutional rights of which a reasonable person would have known."  Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).  When analyzing the issue of qualified immunity, the court must first determine whether the plaintiff has sufficiently alleged violation of a statutory or constitutional right.  If the plaintiff has asserted such a violation, only then does the court inquire whether the right was clearly established at the time of the violation.  Wilson v. Layne, 526 U.S. 603, 609 (1999); Butler v. City of Prairie Village, Kansas, 172 F.3d 736, 745 (10th Cir. 1999).  Because I find that the claims against defendants Lilly, Cabling, Go, Singh, Englund, and Wermers are either time-barred or fail to state a claim upon which relief can be granted, I do not reach the issue of qualified immunity.

## IV.  CONCLUSION

I respectfully RECOMMEND that the Motion be GRANTED IN PART and DENIED IN PART as follows:

1.  GRANTED to the extent it seeks dismissal of the claims against the defendants in their official capacities for retroactive monetary relief based on Eleventh Amendment immunity;

2.  GRANTED insofar as it seeks dismissal of Claims Four, Five, Six, and Seven in their entirety;

3.   GRANTED insofar as it seeks dismissal of Claims One and Two as against defendants Eskastrand, Lilly, Cabling, Neufeld, Go, Englund, Singh, and Wermers; and

4.   GRANTED to the extent it seeks dismissal of defendants Eskastrand, Lilly, Cabling, Neufeld, Go, Englund, Singh, and Wermers from this action.

I further RECOMMEND that all claims for violations of the Fourteenth Amendment be DISMISSED.[10]

FURTHER, IT IS ORDERED that pursuant to 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), the parties have 10 days after service of this recommendation to serve and file specific, written objections.  A party's failure to serve and file specific, written objections waives *de novo* review of the recommendation by the district judge, Fed. R. Civ. P. 72(b); Thomas v. Arn, 474 U.S. 140, 147-48 (1985), and also waives appellate review of both factual and legal questions. In re Key Energy Resources Inc., 230 F.3d 1197, 1199-1200 (10th Cir. 2000).  A party's objections to this recommendation must be both timely and specific to preserve an issue for *de novo* review by the district court or for appellate review.  United States v. One Parcel of Real Property, 73 F.3d 1057, 1060 (10th Cir. 1996).

---

[10]In the event this recommendation is accepted by the district judge, the following claims will remain:

1.  Claim One as against defendants Wasko and Laurence;

2.  Claim Two as against defendant Wasko; and

3.  Claim Three as against defendant Howe.

Dated January 26, 2009.

                                        BY THE COURT:

                                         s/ Boyd N. Boland
                                        United States Magistrate Judge